HON. JUDGE MARY K. DIMKE

WILLIAM C. SCHROEDER
**KSB LITIGATION, P.S.**
510 W. Riverside Ave., Ste. 300
Spokane, WA, 99201
(509) 624-8988
wcs@KSBlit.legal
*Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM C. SCHROEDER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:22-cv-00172-MKD<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**<br><br>[ECF 6]<br><br>*November 9, 2022*<br>*Without Oral Argument* |

## SUMMARY

Does the Constitution permit one federal House district to be comprised of 990,837 people, while another has only 542,704? The Supreme Court has previously held that "congressional representation must be based on population as nearly as is practicable." *Reynolds v. Sims*, 377 U.S. 533, 577 (1962).

> [F]undamentally, "vote dilution" in the one-person, one-vote cases refers to the idea that each vote must carry equal weight. In other words, each representative must be accountable to (approximately) the same number of constituents.

*Rucho v. Common Cause*, 139 S.Ct. 2484, 2501 (2019) (Roberts, C.J.).

*Rucho* recently identified three types of Article I, § 2 claim: (1) "vote dilution" one person, one vote claims; (2) racial gerrymandering claims; and (3)

RESPONSE TO MOTION TO DISMISS - 1

partisan gerrymandering claims. *Id.*, 139 S.Ct. at 2495-96 (2019). While partisan gerrymandering claims are not justiciable, 'one person, one vote' claims are. *Id.* at 2494-95 (citing *Wesberry v. Sanders*, 376 U.S. 1, 7 (1964), and *Shaw v. Reno*, 509 U.S. 630 (1993)).

> The instant case is expressly a 'one person, one vote' claim:
> [] 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to 435 members, deprives citizens and residents of their constitutional right to equal representation in the House of Representatives [Art. I, § 2].
> [] Furthermore, 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to 435 members, deprives citizens and residents of their constitutional right to equal representation in the electoral college for the presidency [Art. II, § 1]
> [] Congress' failure to increase or otherwise change the number of Representatives commensurate with the total population of the United States and the relative populations of the several States, and instead leaving the number [435] unchanged since 1912, and self-executing since 1941, violates the 'one person, one vote' principle.
> [] Particularly when read together with the Art. II, § 1 requirements of the 'electoral college,' as well as the other above-quoted sections of the Constitution pertaining to voting, the 'one person, one vote' principle must apply to relative district size among the states, as well as within each state.

[ECF 1 at 58-59 ¶¶142-45]

The right to vote is fundamental. See *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1962). "[T]he Citizenship Clause [of the Fourteenth Amendment] guarantees citizens equal treatment by the Federal Government with respect to civil rights." *U.S. v. Vaello Madero*, 142 S.Ct. 1539, 1551 (2022) (Thomas, J., concurring). Individual citizens have standing to bring 'one person, one vote' claims pursuant to Article I, § 2 regarding "malapportionment of congressional districts" because

RESPONSE TO MOTION TO DISMISS - 2

the Constitution "require[s] that 'one man's vote in a congressional election is to be worth as much as another's.'" *Rucho v. Common Cause*, 139 S.Ct. at 2496 (quoting *Wesberry v. Sanders*, 376 U.S. at 7)). See, also, *Baker v. Carr*, 369 U.S. 186, 199 (1962) (individual standing to challenge apportionment under Fourteenth Amendment). "[C]ongressional representation must be based on population as nearly as is practicable." *Reynolds v. Sims*, 377 U.S. at 577. "[E]ach representative must be accountable to (approximately) the same number of constituents." *Rucho v. Common Cause*, 139 S.Ct. at 2501.

Subsequent to the twenty-fourth census, operation of 2 U.S.C. § 2a(a) automatically retained the 435-member cap, and automatically re-apportioned House seats such that presently, *e.g.*, Montana voters reside within House districts comprised of 542,704 resident persons, while Delaware voters reside within a House district comprised of 990,837 resident persons. [ECF 1 at 54] Each Montana vote in a race for the House is worth almost two (2) Delaware votes; alternatively, one (1) Delaware vote is only about half (½) of a Montana vote.

2 U.S.C. § 2a(a), which has permanently capped the House of Representatives at 435 members for more than a century, and which automatically apportions House seats to the States without regard to equalizing the population of each congressional district among the States, violates Article I, § 2. As provided in the recent *Rucho* decision, Plaintiff has standing to bring this 'one person, one vote' claim, which is justiciable. *Rucho v. Common Cause*, 139 S.Ct. at 2495-96. Defendant's Motion to Dismiss should therefore be denied.

RESPONSE TO MOTION TO DISMISS - 3

# FACTUAL AND PROCEDURAL HISTORY

**A. The Composition of the House of Representatives.**

> The House of Representatives shall be composed of Members chosen every second Year by the People of the several States[.] … Representatives … shall be apportioned among the several States which may be included within this Union, according to their respective …whole Number of [] Persons[.] … The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative[.]

U.S.CONST., Art. I, § 2.

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]" U.S.CONST., Art. II, § 1.

On September 25, 1789, the First Congress proposed twelve (12) "Articles" [of amendment] to the Constitution. Article "the first", never ratified, provides:

> After the first enumeration required by the first article of the Constitution, there shall be one Representative for every thirty thousand, until the number shall amount to one hundred, after which the proportion shall be so regulated by Congress, that there shall be not less than one hundred Representatives, nor less than one Representative for every forty thousand persons, until the number of Representatives shall amount to two hundred; after which the proportion shall be so regulated by Congress, that there shall not be less than two hundred Representatives, nor more than one Representative for every fifty thousand persons.

[See ECF 1 at 4 ¶15]

RESPONSE TO MOTION TO DISMISS - 4

## B. Equal-Sized Congressional Districts Apportioned Among The States According To Population, 1790 to 1910.

The **first** census counted 3,929,214 resident persons of the thirteen (13) United States, as of August 2, 1790. "[T]he House of Representatives shall be composed of members elected agreeably to **a ratio of one member for every thirty-three thousand persons in each state**[.]" Apportionment Act of April 14, 1792, 2nd Cong., Sess. I, Ch. 23.

The **second** census counted 5,308,483 resident persons in the sixteen (16) United States, as of August 4, 1800. "[T]he House of Representatives shall be composed of [**141**] **members** elected agreeably to **a ratio of one member for every thirty-three thousand persons in each state**[.]" Apportionment Act of January 14, 1802, 7th Cong., Sess. I, Ch. 1.

The **third** census counted 7,239,861 resident persons in the seventeen (17) United States, as of August 6, 1810. "[T]he House of Representatives shall be composed of [**181**] **members** elected agreeably to **a ratio of one representative for every thirty-five thousand persons in each state**[.]" Apportionment Act of December 21, 1811, 12th Cong., Sess. I, Ch. 9.

The **fourth** census counted 9,638,453 resident persons in the twenty-three (23) United States, as of August 7, 1820. "[T]he House of Representatives shall be composed of [**215**] **members** elected agreeably to **a ratio of one representative for every forty-seven thousand persons in each state**[.]" Apportionment Act of March 7, 1822, 17th Cong., Sess. I, Ch. 10 (March 7, 1822).

RESPONSE TO MOTION TO DISMISS - 5

The **fifth** census counted 12,860,702 resident persons in the twenty-four (24) United States, as of June 1, 1830. "[T]he House of Representatives shall be composed of [**240**] **members**, elected agreeably to **a ratio of one representative for every forty-seven thousand and seven hundred persons in each state**[.]" Apportionment Act of May 22, 1832, 22nd Cong., Sess. I, Ch. 91.

The **sixth** census counted 17,063,353 resident persons in the twenty-six (26) United States, as of June 1, 1840. "[T]he House of Representatives shall be composed of [**223**] **members** elected agreeably to **a ratio of one Representative for every seventy thousand six hundred and eighty persons in each State, and of one additional representative for each State having a fraction greater than one moiety of the said ratio**[.]" Apportionment Act of June 25, 1842, 27th Cong., Sess. II, Ch. 47.

The **seventh** census counted 23,191,876 resident persons in the thirty (30) United States, as of June 1, 1850. "[T]he whole number of representatives is hereby **increased to two hundred thirty-four** [**234**][.]" Apportionment Act of July 30, 1852, 32nd Cong., Sess. I, Ch. 74.

The **eighth** census counted 31,443,321 resident persons in the thirty-three (33) United States, as of June 1, 1860. "[T]he number of members of the House of Representatives of the Congress of the United States shall be two hundred and forty-one [**241**], and the eight additional members shall be assigned one each to Pennsylvania, Ohio, Kentucky, Illinois, Iowa, Minnesota, Vermont, and Rhode Island." Apportionment Act of March 4, 1862, 37th Cong., Sess. II, Ch. 36.

RESPONSE TO MOTION TO DISMISS - 6

"Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[.]" U.S.CONST. Fourteenth Amend. § 2. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S.CONST. Fourteenth Amend. § 1. Each citizen has a "right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof[.]" U.S.CONST. Fourteenth Amend. § 2.

The **ninth** census counted 38,558,371 resident persons in the thirty-seven (37) United States, as of June 1, 1870. "[T]he House of Representatives shall be composed of two hundred and eighty-three [**283**] **members**, to be apportioned among the several States in accordance with the provisions of this act[.]" Apportionment Act of February 2, 1872, 42nd Cong., Sess. II, Ch. 11, Sec. 1. "[T]he following States shall be entitled to one [1] representative each in the Congress of the United States in addition to the number apportioned to such States by the act [of February 2, 1872], to wit: New Hampshire, Vermont, New York, Pennsylvania, Indiana, Tennessee, Louisiana, Alabama, and Florida[.]" Apportionment Act of May 30, 1872, 42nd Cong., Sess. II, Ch. 239.

The **tenth** census counted 50,189,209 resident persons in the thirty-eight (38) United States, as of June 1, 1880. "[T]he House of Representatives shall be composed of three hundred and twenty-five [**325**] **members**, to be apportioned among the several States as follows: [list][.]" Apportionment Act of February 25,

1882, 47th Cong., Sess. I, Ch. 20. "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and twenty-five [325]." [Id.]

The **eleventh** census counted 62,979,766 resident persons in the forty-two (42) United States, as of June 1, 1890. "[T]he House of Representatives shall be composed of three hundred and fifty-six [**356**] **members**, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of February 7, 1891, 51st Cong., Sess. II, Ch. 116. "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and fifty-six [356]." [Id.]

The **twelfth** census counted 76,212,168 resident persons in the forty-five (45) United States, as of June 1, 1900. "[T]he House of Representatives shall be composed of three hundred and eighty-six [**386**] **members**, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of January 16, 1901, 56th Cong., Sess. II, Ch. 93. "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and eighty-six [386]." [Id.]

The **thirteenth** census counted 92,228,496 resident persons in the forty-six (46) United States, as of April 15, 1910. Washington had the largest district, of 228,027, and Nevada the smallest, of 80,293. "[T]he House of Representatives shall be composed of four hundred and thirty-three [**433**] **Members**, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of August 8, 1911, 62nd Cong., Sess. I, Ch. 5. "[I]f the Territories of Arizona and

RESPONSE TO MOTION TO DISMISS - 8

New Mexico shall become States in the Union before the apportionment of Representatives under the next decennial census they shall have one Representative each, and if one of such Territories shall so become a State, such State shall have one Representative, which Representative or Representatives shall be in addition to the number four hundred and thirty-three, as provided in section one of this Act[.]" [Id.]

### C. Automatic Re-Apportionment Of 435 Seats – 1920 to Present.

The **fourteenth** census counted 106,021,537 resident persons in the forty-eight (48) United States, as of January 1, 1920. New Mexico had the largest district, of 353,428, and Nevada the smallest, of 75,820. "In 1920, the Census Bureau did transmit apportionment counts to Congress, but Congress did not reapportion."[1]

The Permanent Apportionment Act of 1929 provides: "The President shall transmit to the Congress a statement showing the whole number of persons in each State … as ascertained under the fifteenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number [435] of Representatives[.]" [Act of 1929, Sec. 22(a)]

The **fifteenth** census counted 123,202,624 resident persons in the United States, as of April 1, 1930. New Mexico had the largest district, of 395,982, and Nevada the smallest, of 86,390.

---

[1] https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html

RESPONSE TO MOTION TO DISMISS - 9

The **sixteenth** census counted 132,164,569 resident persons in the United States, as of April 1, 1940. Vermont had the largest district, of 359,231, and Nevada the smallest, of 110,247.

Congress copied the 1929 Act in 1940:

> [The 1929 Act] to provide for apportionment of Representatives in Congress … is hereby amended in the first sentence of section 22 (a) by striking out the words "second regular session of the Seventy-First Congress" and substituting the following words: "first regular session of the Seventy-seventh Congress", and by striking out "fifteenth" and inserting "sixteenth".

54 Stat. 162, Sec. 1 (April 25, 1940).

Congress then made apportionment of 435 members permanent and automatic:

> Each State shall be entitled, in the Seventy-eighth and in each Congress thereafter until the taking effect of a reapportionment under a subsequent statute[,] … to the number of Representatives shown in the statement transmitted to the Congress on January 8, 1941, based upon the method known as the method of equal proportions, no State to receive less than one Member.

Permanent Apportionment Act of November 15, 1941, 77th Cong., Sess. I, Ch. 470, Sec. 2(a).

2 U.S.C. § 2a(a) now provides:

> On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State … as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives [435] by the method known as the method of equal proportions, no State to receive less than one Member.

RESPONSE TO MOTION TO DISMISS - 10

2 U.S.C. § 2a(b) now provides:

> Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member.

The **seventeenth** census counted 151,325,798 resident persons in the United States, as of April 1, 1950. Rhode Island had the largest district (395,948) and Nevada the smallest (160,083).

The **eighteenth** census counted 179,323,175 resident persons in the fifty (50) United States, as of April 1, 1960. Maine had the largest district (484,633) and Alaska the smallest (226,167).

The **nineteenth** census counted 203,302,031 resident persons in the United States, as of April 1, 1970. North Dakota had the largest district (624,181) and Alaska the smallest (304,067).

The **twentieth** census counted 226,542,199 resident persons in the United States, as of April 1, 1980. South Dakota had the largest district (690,178) and Montana the smallest (393,345).

The **twenty-first** census counted 248,709,873 resident persons in the United States, as of April 1, 1990. Montana had the largest district (803,655) and Wyoming the smallest (455,975).

The **twenty-second** census counted 281,421,906 resident persons in the United States, as of April 1, 2000. Montana had the largest district (905,316) and Wyoming the smallest (495,304).

The **twenty-third** census counted 308,745,538 resident persons in the United States, as of April 1, 2010. Montana had the largest district (994,416) and Rhode Island the smallest (527,624).

The **twenty-fourth** census counted 331,449,281 resident persons in the United States, as of April 1, 2020. Delaware had the largest district (990,837) and Montana the smallest (542,704).

## ARGUMENT

Individual standing, and justiciability, are both settled questions in favor of Plaintiff, in "vote dilution" 'one person, one vote' claims. *Rucho v. Common Cause*, 139 S.Ct. at 2495-96, 2501.

The Framers of the Constitution intended all House districts to have approximately the same population, as did each Congress to legislate on the issue in the 18th and 19th Centuries. [ECF 1 at 4 ¶15 (Framers); 5 ¶20 (2nd Cong.); 5 ¶22 (7th Cong.); 6 ¶26 (12th Cong.); 7 ¶30 (17th Cong.), ¶33 (22nd Cong,), ¶35 (27th Cong.); 8 ¶36 (31st Cong.), ¶38 (32nd Cong.), ¶40 (37th Cong.); 10 ¶¶48-49 (42nd Cong.); 11 ¶52 (47th Cong.); 11-12 ¶¶56-57 (51st Cong.); 12 ¶¶61-62 (56th Cong.); and 15 ¶¶64-65 (62nd Cong.)]

> Undoubtedly, the right of suffrage is a fundamental matter [] in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. at 561-62.

"[C]ongressional representation must be based on population as nearly as is practicable." *Reynolds v. Sims*, 377 U.S. at 577. *Reynolds*, which concerned

RESPONSE TO MOTION TO DISMISS - 12

apportionment of state legislative seats in Alabama, explained that "All of the parties have agreed with the District Court's finding that legislative inaction for some 60 years in the face of growth and shifts in population has converted Alabama's legislative apportionment plan enacted in 1901 into one completely lacking in rationality." *Reynolds v. Sims*, 377 U.S. at 588 (STEWART, J., concurring).

"Legislative inaction, coupled with the unavailability of any political or judicial remedy, had resulted, with the passage of years, in the perpetuated scheme becoming little more than an irrational anachronism." *Reynolds*, 377 U.S. at 570.

> Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. … Overweighting and overvaluation of the votes of those living here has the certain effect of dilution and undervaluation of the votes of those living there. The resulting discrimination against those individual voters living in disfavored areas is easily demonstrable mathematically. … Weighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable. One must be ever aware that the Constitution forbids 'sophisticated as well as simpleminded modes of discrimination.' … 'We do not believe that the Framers of the Constitution intended to permit the same vote-diluting discrimination to be accomplished through the device of districts containing widely varied numbers of inhabitants. To say that a vote is worth more in one district than in another would * * * run counter to our fundamental ideas of democratic government * * *.'

*Reynolds v. Sims*, 377 U.S. at 562-64 (internal citations omitted).

"To the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote." *Id*. at 567.

RESPONSE TO MOTION TO DISMISS - 13

> The complexions of societies and civilizations change, often with amazing rapidity. A nation once primarily rural in character becomes predominantly urban. Representation schemes once fair and equitable become archaic and outdated. But the basic principle of representative government remains, and must remain, unchanged—the weight of a citizen's vote cannot be made to depend on where he lives. Population is, of necessity, the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies.

*Id*.

"The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." *Gray v. Sanders*, 372 U.S. 368, 381, 382 (1963) ("This case … involves statewide elections of a United States Senator[.]").

> Section 2 of Article I commands that Congressmen shall be chosen by the people of the several states by electors, the qualifications of which it prescribes. The right of the people to choose … is a right established and guaranteed by the Constitution and hence is one secured by it to those citizens and inhabitants of the state entitled to exercise the right. … Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections. This Court has consistently held that this is a right secured by the Constitution. … And since the constitutional command is without restriction or limitation, the right unlike those guaranteed by the Fourteenth and Fifteenth Amendments, is secured against the action of individuals as well as of states.

*United States v. Classic*, 313 U.S. 299, 314-15 (1941) (internal citations omitted).

"The Fifth Amendment … does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But the concepts of equal protection and due process, both stemming from our American ideal of

RESPONSE TO MOTION TO DISMISS - 14

fairness, are not mutually exclusive." *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954). "The [Due Process Clause of the Fifth Amendment] requires that Congress treat similarly situated persons similarly, not that it engage in gestures of superficial equality." *Rostker v. Goldberg*, 453 U.S. 57, 79 (1981) (regarding Military Selective Service Act). "[B]asic due process and equal protection principles [are] applicable to the Federal Government." *U.S. v. Windsor*, 570 U.S. 744, 769-70 (2013) (regarding Defense Of Marriage Act) (citing U.S.CONST., Fifth Amend.; and *Bolling v. Sharpe*, 347 U.S. at 499-500). "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *Windsor*, 570 U.S. at 774 (citations omitted).

"[T]he Citizenship Clause [of the Fourteenth Amendment] guarantees citizens equal treatment by the Federal Government with respect to civil rights." *U.S. v. Vaello Madero*, 142 S.Ct. 1539, 1551 (2022) (Thomas, J., Concurring).

Rejecting the contention that apportionment under Article I is a non-justiciable political question, the *Wesberry* court explained that "The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article I." *Wesberry v. Sanders*, 376 U.S. at 7.

> We hold that, construed in its historical context, the command of Art. I, s 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's. This rule is followed automatically, of course, when Representatives are chosen as a group on a statewide basis, as was a widespread practice in the first 50 years of our Nation's history. … The history of the Constitution, particularly that part of it relating to the adoption of Art. I, s 2, reveals

RESPONSE TO MOTION TO DISMISS - 15

that those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or by districts, it was population which was to be the basis of the House of Representatives. [pp. 7-9] …

The debates at the Convention make at least one fact abundantly clear: that when the delegates agreed that the House should represent 'people' they intended that in allocating Congressmen the number assigned to each State should be determined solely by the number of the State's inhabitants. The Constitution embodied Edmund Randolph's proposal for a periodic census to ensure 'fair representation of the people,' an idea endorsed by Mason as assuring that 'numbers of inhabitants' should always be the measure of representation in the House of Representatives. The Convention also overwhelmingly agreed to a resolution offered by Randolph to base future apportionment squarely on numbers and to delete any reference to wealth. And the delegates defeated a motion made by Elbridge Gerry to limit the number of Representatives from newer Western States so that it would never exceed the number from the original States. … The House of Representatives, the Convention agreed, was to represent the people as individuals, and on a basis of complete equality for each voter. [pp. 13-14] …

It is in the light of such history that we must construe Art. I, s 2, of the Constitution, which, carrying out the ideas of Madison and those of like views, provides that Representatives shall be chosen 'by the People of the several States' and shall be 'apportioned among the several States * * * according to their respective Numbers.' It is not surprising that our Court has held that this Article gives persons qualified to vote a constitutional right to vote and to have their votes counted. ... Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots, … or diluted by stuffing of the ballot box[.] … No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right. In urging the people to adopt the Constitution, Madison said in No. 57 of The Federalist:

> 'Who are to be the electors of the Federal Representatives? Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names,

RESPONSE TO MOTION TO DISMISS - 16

> more than the humble sons of obscure and unpropitious fortune. The electors are to be the great body of the people of the United States. * * *'
>
> Readers surely could have fairly taken this to mean, 'one person, one vote.' …While it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives. That is the high standard of justice and common sense which the Founders set for us. [pp. 17-18]

*Wesberry*, 376 U.S. at 7-9; 13-14; 17-18 (internal citations omitted).

In 1992, in response to a challenge by Montana after it lost one of its House seats, the Supreme Court explained that the "method of equal proportions" was satisfied in light of "the need to allocate a fixed number of indivisible Representatives among 50 States of varying populations makes it virtually impossible to have the same district size in any pair of States, let alone 50." *U.S. Dept. of Commerce v. Montana*, 503 U.S. 442, 463 (1992). [ECF 1 at 43-44] The *Montana* court did not analyze whether capping the number of representatives at 435 itself could violate citizens' rights to equal representation in the House [Art. I, § 2] and in the electoral college [Art. II, § 1], or the 'one person, one vote' principle, particularly in light of a growing population. 503 U.S. at 451 and n. 24. In 2019, the Supreme Court decided *Rucho*:

> In the leading case of *Baker v. Carr*, voters in Tennessee complained that the State's districting plan for state representatives "debase[d]" their votes, because the plan was predicated on a 60-year-old census that no longer reflected the distribution of population in the State. The plaintiffs argued that votes of people in overpopulated districts held less value than those of people in less-populated districts, and that this inequality violated the Equal Protection Clause of the Fourteenth Amendment. The District Court dismissed the action on the ground that the claim was not justiciable, relying on this Court's precedents[.] …

RESPONSE TO MOTION TO DISMISS - 17

> This Court reversed. It identified various considerations relevant to determining whether a claim is a nonjusticiable political question, including whether there is "a lack of judicially discoverable and manageable standards for resolving it." 369 U.S. at 217, 82 S.Ct. 691. The Court concluded that the claim of population inequality among districts did not fall into that category, because such a claim could be decided under basic equal protection principles. *Id.*, at 226, 82 S.Ct. 691. In *Wesberry v. Sanders*, the Court extended its ruling to malapportionment of congressional districts, holding that Article I, § 2, required that "one man's vote in a congressional election is to be worth as much as another's." 376 U.S. at 8, 84 S.Ct. 526.

*Rucho*, 139 S.Ct. at 2496, 2501.

The *de facto* 435-member cap, 2 U.S.C. § 2a(a), violates 'one person, one vote', because the weight of a person's vote depends upon in which state they reside.

## CONCLUSION

The Constitution requires that all House congressional districts be of roughly equal size – not just within each state, but among them as well. Otherwise, neither the House nor the electoral college function as intended.

Equalizing the population size of Congressional districts both within and among States is justiciable, and Plaintiff has standing, as recently confirmed by the *Rucho* court. Defendant's motion to dismiss should be denied.

Submitted this 7th day of October, 2022,

**KSB LITIGATION, P.S.**

By: *s/ William C. Schroeder*_____
William C. Schroeder, WSBA #41986
510 West Riverside Ave., Ste. 300
Spokane, Washington, 99201
wcs@KSBLit.legal
*Plaintiff*

RESPONSE TO MOTION TO DISMISS - 18

# CERTIFICATE OF SERVICE

I hereby certify that on October 7, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

[NONE]

By: *s/ William C. Schroeder*
William C. Schroeder, WSBA #41986
510 West Riverside Ave., Ste. 300
Spokane, Washington, 99201
P 509 624 8988
wcs@KSBLit.legal
*Plaintiff*

RESPONSE TO MOTION TO DISMISS - 19