1
2
3
4
5
6
7

*BRIAN M. BOYNTON*
Principal Deputy Assistant Attorney General
*LESLEY FARBY*
Assistant Branch Director
*BRIAN C. ROSEN-SHAUD*
Trial Attorney
1100 L St NW, Rm 12022
Washington, DC 20530
Telephone: (202) 305-7667

8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

10
11
12
13
14
15
16
17
18

WILLIAM C. SCHROEDER,

                              Plaintiff,

        vs.

UNITED STATES OF AMERICA,

                              Defendant.

No. 2:22-cv-00172-MKD

**DEFENDANT'S REPLY IN SUPPORT OF THE MOTION TO DISMISS**

Hearing: November 9, 2022
Without Oral Argument

19
20
21
22
23
24
25
26
27
28

        The Court cannot weigh in on the political calculus of whether the House of Representative is too small: "[N]o political problem is less susceptible of a precise solution, than that which relates to the number most convenient for a representative legislature." The Federalist No. 55, at 373 (Jacob E. Cooke ed., 1961).  The Court should dismiss the Complaint for lack of jurisdiction because it raises a political question and because Plaintiff lacks standing.  Alternatively, the Court should dismiss the Complaint for failure to state a claim, as Plaintiff has not alleged that 2 U.S.C. § 2a violates any pertinent constitutional provision.

1

**I.    THE COMPLAINT SUFFERS FROM MULTIPLE JURISDICTIONAL DEFECTS**

2

3     *First*, the Complaint presents a generalized grievance, which may not be settled

4     in an Article III court.  Def.'s Mot. to Dismiss ("Def. Mot.") ECF No. 6 at 12-14.

5     Plaintiff's failure to identify an individual injury is easily explained: Washington

6     residents would not be better situated under a reapportioned House of Representatives.

7     *See* Def. Mot. 12-13.  By contrast, the voters in *Baker v. Carr* who had standing to

8     challenge the apportionment of Tennessee's state legislature resided in counties where

9     their votes were diluted compared to voters in more advantaged counties.  369 U.S.

10    186, 207-08 (1962).  Plaintiff does not, and could not, make such a claim about

11    Washington voters.  Plaintiff relies instead on an alleged disadvantage to Delaware

12    voters.  Pl.'s Resp. to Mot. to Dismiss ("Pl. Resp.") ECF No. 7 at 3.  But Plaintiff

13    cannot assert the rights of third parties, such as voters in other states.  *See Kowalski v.*

14    *Tesmer*, 543 U.S. 125, 129 (2004) (also explaining narrow exceptions to the bar on

15    third-party standing not applicable here).  If Plaintiff's claim is "harm to his and every

16    citizen's interest in proper application of the Constitution" with respect to the

17    apportionment of the House, that "does not state an Article III case or controversy."

18    *See Lujan v. Def. of Wildlife,* 504 U.S. 555, 573-74 (1992).  In sum, Plaintiff has not

19    identified an individualized harm caused by 2 U.S.C. § 2a.  *See id.* at 560; *see also*

20    *United States v. Richardson*, 418 U.S. 166, 179 (1974) (noting that failure to allege

21    individual injury "gives support to the argument that the subject matter is committed

22    to the surveillance of Congress, and ultimately to the political process.").

23    *Second¸* Plaintiff has failed to identify what relief the Court could provide.  *See*

24    Def. Mot. 14-15 (*citing Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020);

25    *reh'g en banc denied*, 986 F.3d 1295 (9th Cir. 2021)).[1]

26    _____

27    [1]    To the extent that Plaintiff requests that the Court order that the population size

28    of districts be "equaliz[ed]," *see* Pl. Resp. 18, "the need to allocate a fixed number of

*Third*, Plaintiff's claim presents a nonjusticiable political question.  Def. Mot. 6-12.  Plaintiff's chief response appears to be that the one-person, one-vote standard from *Wesberry v. Sanders*, 376 U.S. 1 (1964), provides a judicially manageable standard for Article III courts.  Pl. Resp. 15.  But the *Wesberry* standard is wholly inapplicable to this case, as explained below.  *See infra* II.  Plaintiff also misses the mark in claiming that *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), confirms that the instant dispute is justiciable.  Pl. Resp. 18.  There, the Supreme Court *rejected* extending the one-person, one-vote principle beyond unequal districts within a state. *Rucho*, 139 S. Ct. at 2501.  Indeed, the opinion in *Rucho* abrogated the authority upon which the district court in *Clemons v. U.S. Dep't of Com.*, 710 F. Supp. 2d 570 (N.D. Miss. 2010), relied in determining that a challenge similar to Plaintiff's was justiciable.  *See Rucho*, 139 S. Ct. at 2497, 2508 (abrogating *Davis v. Bandemere*, 478 U.S. 109 (1986)).

In any event, Plaintiff's claim fails three other independent tests for identifying a political question: Article I, § 2 commits the size of the House to the political branches, the question cannot be decided without an inherent policy determination beyond the judicial sphere, and the Court's resolution of the claim would express a lack of respect for the political branches.  Def. Mot. 7-12 (citing *Baker*, 369 U.S. 186; *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005)).  Plaintiff's opposition does not refute these points.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM

*First*, Plaintiff's effort to import the one-person, one-vote principle from *Wesberry* is unavailing.  *Wesberry* held that the Constitution requires each State to

indivisible Representatives among 50 States of varying populations makes it virtually impossible to have the same size district in any pair of States, let alone 50[,]" *U.S. Dept. of Com. v. Montana*, 503 U.S. 442, 463 (1992).

achieve equality among the Congressional districts within its State "as nearly as . . . practicable." 376 U.S. at 7-8.  Pursuant to that standard, a State must make a good-faith effort to achieve "precise mathematical equality" between intrastate districts and, if it has not, "must justify each variance, no matter how small." *Kirkpatrick v. Preisler*, 394 U.S. 526, 530-31 (1969).  The *Wesberry* standard does not govern here.

The Supreme Court has twice considered and rejected the *Wesberry* standard as applied to Congress's interstate apportionment determinations.  In *U.S. Dep't of Com. v. Montana*, the Supreme Court reversed a district court judgment that "looked to the principle of equal representation for equal numbers of people that was applied to intrastate districting in *Wesberry* . . . and held it applicable to congressional apportionment of seats among the States." *Wisconsin v. City of New York*, 517 U.S. 1, 13 (1996) (describing *Montana*, 503 U.S. 442, 447-48 (1992)).  Montana argued that the constitutional requirement that Congress apportion Representatives to the States "according to their respective numbers" required Congress to use an apportionment method that, in its view, achieved greater equality in the distribution of Representatives among the States.  *Montana*, 503 U.S. at 444-46.  In rejecting Montana's challenge, the Supreme Court focused on the fact "that the *Wesberry* line of cases all involved intrastate disparities in the population of voting districts, . . . whereas Montana had challenged interstate disparities resulting from the actions of Congress." *Wisconsin*, 517 U.S. at 14 (citing *Montana*, 503 U.S. at 460).  As the Court explained, "[r]espect for a coordinate branch of Government raises special concerns not present in" the Court's "previous apportionment cases concern[ing] States' decisions creating legislative districts[.]" *Montana*, 503 U.S. at 459.  Moreover, "although 'common sense' supports a test requiring 'a good-faith effort to achieve precise mathematical equality' *within* each State, the constraints imposed by Article I, § 2, itself make that goal illusory for the Nation as a whole." *Id.* at 463 (citations omitted).  "[T]he need to allocate a fixed number of indivisible

Representatives among 50 States of varying populations makes it virtually impossible to have the same size district in any pair of States, let alone in all 50." *Id.* That problem persists no matter the number of members of the House.

Four years after *Montana*, the Supreme Court reaffirmed the inapplicability of the *Wesberry* standard to Congressional apportionment determinations. In *Wisconsin v. City of New York*, the plaintiffs challenged the Secretary of Commerce's conduct of the census. 517 U.S. at 4. The Court of Appeals had applied the *Wesberry* standard to hold that the Secretary was constitutionally required to conduct a census that was "as accurate as possible." *See id.* at 12, 16-17. The Supreme Court reversed, again explaining that the difference between congressional apportionment decisions and state districting decisions was "significant beyond the simple fact that Congress was due more deference than the States in this area." *Id.* at 14. Acknowledging the reality that "the Constitution itself, by guaranteeing a minimum of one representative for each State, made it virtually impossible in interstate apportionment to achieve the standard imposed by *Wesberry*," *id.* at 14-15, the Court held that the Court of Appeals "erred in holding the 'one person-one vote' standard of *Wesberry* and its progeny applicable" to action by "the federal rather than a state government" in a context where "constitutional requirements make it impossible to achieve precise equality in voting power nationwide," *id.* at 16 (citations omitted).

Multiple courts have directly rejected the argument that the one-person, one-vote principle from *Wesberry* applies in a challenge to the size of the House. In *Whelan v. Cuomo*, 415 F. Supp 251 (E.D.N.Y. 1976), a plaintiff sued the Secretary of State of New York State seeking to enjoin the Secretary from certifying federal congressional election results on the ground that 2 U.S.C. § 2a was unconstitutional. *Id.* at 253. The court rejected Plaintiff's request for an injunction mandating one Representative for every thirty thousand residents. *Id.* Though the court acknowledged the language in *Wesberry* about "the importance of a citizen's vote for

law-makers," the court correctly held that *Wesberry* only mandated equal-sized districts within a state. *Id.* at 258. Likewise, in *Wendelken v. Bureau of the Census*, the court rejected plaintiff's argument that "in setting the size of the House of Representatives, Congress is constitutionally required to ensure that Congressional districts are 'as equal as they can possibly be.'" 582 F. Supp. 342, 342-43 (S.D.N.Y 1983), *aff'd* 742 F.2d 1437 (2d Cir. 1984). The court properly determined that "[t]he decision to limit the size of the House of Representatives to 435 members is expressly committed to the discretion of Congress." *Id.* at 343. Even the *Clemons* district court, which incorrectly determined that it had jurisdiction to resolve the dispute, held that the one-person, one-vote standard was inapplicable to a challenge to 2 U.S.C. § 2a: "[t]he Constitution allows Congress to set the number of House members." *Clemons*, 710 F. Supp. 2d at 589, *vacated*, 562 U.S. 1105 (2010) (also determining that plaintiffs sought "judicial entry into the exact area of decision-making that was reserved for Congress").[2]

*Second*, Plaintiff is wrong to say that the Founders, or subsequent Congresses, "intended all House districts to have approximately the same population[.]" Pl. Resp. 12. Plaintiff himself cites over 120 years of practice where Congress reapportioned the House of Representatives such that the most populous district had up to *three times* as many residents as the least populous. *E.g.*, Pl. Resp. 8 ("[A]s of April 15, 1910[,] Washington had the largest district, of 228,027, and Nevada the smallest, of

---

[2]    Plaintiff's reliance on *Reynolds v. Sims* is paradoxical because, though the Supreme Court held that a state legislative districting plan violated the Equal Protection Clause where it diluted the votes of residents of populous counties, the Court expressly allowed that "the size of [State] legislative bodies is of course a matter within the discretion of each individual State." 377 U.S. 533, 581 n.63 (1964).

80,293.").  Nor did the Founders craft districts of equalize size.  *Compare* U.S. Const. art. I, § 2, cl. 3, *with* 3 The Records of the Federal Convention of 1787 at 253 (Farrand ed. 1911) (providing Delaware with one Representative for its 37,000 residents, Rhode Island with one Representative for its 58,000 residents, and Georgia with three Representatives for its 90,000 residents).

*Third*, Plaintiff does not dispute that 2 U.S.C. § 2a satisfies the only three constitutional requirements for the composition of the House of Representatives: "[T]he number of Representatives shall not exceed one for every 30,000 persons; each State shall have at least one Representative; and district boundaries may not cross state lines."  *Montana*, 503 U.S. at 442, 447–48; *see* Def. Mot. 15-16; *see also* Pl. Resp. 17 (acknowledging that *Montana* states that "the need to allocate a fixed number of indivisible Representatives among 50 States of varying populations makes it virtually impossible to have the same district size in any pair of States, let alone 50.")  Whatever the policy wisdom of the Plaintiff's claim, the Constitution requires no more.

## CONCLUSION

For the foregoing reasons and those stated in Defendant's motion, the Court should dismiss the Complaint.[3]

---

[3]    Plaintiff "'tacitly concede[d]'" his request for a three-judge district court "'by failing to address defendants' argument in [his] opposition,'" Def. Mot. 17.  *See Renee D. v. Kijakazi*, No. 2:20-CV-00327-MKD, 2021 WL 4295749, at *5 (E.D. Wash. Sept. 21, 2021) (Dimke, M.J.) (*quoting Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, *3 (E.D. Cal. Feb. 5, 2007)).

1    DATED this 21st day of October 2022.

2                                        BRIAN M. BOYNTON
3                                        Principal Deputy Assistant Attorney
                                         General
4
                                         LESLEY FARBY
5                                        Assistant Branch Director

6                                        */s/ Brian Rosen-Shaud*
                                         BRIAN C. ROSEN-SHAUD
7                                        Trial Attorney (ME Bar No. 006018)
                                         United States Department of Justice
8                                        Civil Division, Federal Programs Branch
                                         1100 L Street NW
9                                        Washington, D.C. 20005
                                         Telephone: (202) 305-7667
10                                       Brian.C.Rosen-Shaud@usdoj.gov

11                                       Attorneys for Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Certificate of Service***

     I hereby certify that on October 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| NAME & ADDRESS | Method of Delivery |
|---|---|
| William C. Schroeder<br>KSB Litigation, P.S.<br>510 W. Riverside Ave., Ste. 300<br>Spokane, WA, 99201<br>Email: wcs@KSBlit.legal<br>*Plaintiff* | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD